Plaintiff's Name _Rodney C. Buckley Jr._

Inmate No. _AA-9358_

Address _Solano State Prison_

_P.O. Box 4000_

_Vacaville,CA     95696_

**FILED**

NOV 27 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
                    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

Rodney C. Buckley Jr.                            1:17-cv-0102-BAM(PC)

(Name of Plaintiff)                                   (Case Number)

vs.                                      **AMENDED CIVIL RIGHTS COMPLAINT UNDER:**

B.JOHNSON _____       ☒ **42 U.S.C. 1983 (State Prisoner)**

R.ZAMORA _____        ☐ **Bivens Action [403 U.S. 388 (1971)] (Federal Prisoner)**

A.ROCHA _____

J.GONZALES _____

GUITERREZ _____        **RECEIVED**

JOHN DOE _____

(Names of all Defendants)                      NOV 27 2017

**I. Previous Lawsuits (list all other previous or pending lawsuits on additional page):**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY CLERK

A.  Have you brought any other lawsuits while a prisoner?  Yes____  No_X_

B.  If your answer to A is yes, how many? _____

    Describe previous or pending lawsuits in the space below. (If more than one, attach additional page to continue outlining all lawsuits in same format.)

    1. Parties to this previous lawsuit:

        Plaintiff _____

        Defendants _____

        _____

    2. Court (if Federal Court, give name of District; if State Court, give name of County)

        _____

    3. Docket Number _____        4. Assigned Judge _____

    5. Disposition  (Was the case dismissed? Appealed?  Is it still pending?)

        _____

To whom it may concern

On  September 29, 2017 United States Magistrate Judge  Barbara McAuliffe ordered Plantiff to either amend his complaint or pursue on cognizable claims in case no. 1:17-cv-0102-BAM(PC). Plantiff has sought to comply with these orders to the best of his abilities and understanding. He hopes that he has met requirements and if not he would ask the courts to resend his complaint back to him so that he may have more time to study. He would also like to inform the courts that he is dropping his claim regarding equal protection and due process, and is only furthering with present claims. Thank you for your time and attention on this matter.

DATE: 10/29/17

RODNEY C. BUCKLEY JR.

5. Disposition  (Was the case dismissed? Appealed? Is it still pending?)

_____

6. Filing Date (approx.) _____    7. Disposition Date (approx.) _____

## II. Exhaustion of Administrative Remedies

**NOTICE:**  Pursuant to the Prison Litigation Reform Act of 1995, Á[n]o action shall be brought with respect to prison conditions under [42 U.S.C. ˮ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.ô 42 U.S.C. ˮ 1997e(a).  Prior to filing suit, inmates are <u>required</u> to exhaust the available administrative remedy process, <u>Jones v. Bock</u>, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); <u>McKinney v. Carey</u>, 311 F.3d 1198, 1999 (9th Cir. 2002), and neither futility nor the unavailability of money damages will excuse the failure to exhaust, <u>Porter v. Nussle</u>, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  If the court determines that an inmate failed to exhaust prior to filing suit, the unexhausted claims will be dismissed, without prejudice. <u>Jones</u>, 549 U.S. at 223-24, 127 S.Ct. at 925-26.

A. Is there an inmate appeal or administrative remedy process available at your institution?

Yes__X____   No_____

B. Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

Yes___x___   No_____

C. Is the process completed?

Yes_x___          If your answer is yes, briefly explain what happened at each level.

Plantiff filed his grievance with athe institution CSP (Corcoran State

Prison) 2-12-13 on paper following his initial verbal complaint regarding

staff misconduct on January 21,2013. The first level was bypassed. The

second level was addressed by Lt. Marsh, and was partially granted. July 17

2013 his appeal was rejected. December 6, 2013 appeal was cancelled.(Cont.
on attachment A)
   No_____          If your answer is no, explain why not.

_____

_____

_____

_____

2.

ATTACHMENT

A

## Cont. 3-A

<u>D</u>efendants John Doe

F. Name 'John Doe' is employed as Correctional Officer

Current Address/Place of Employment Corcoran State Prison

G. Name Guiterrez is employed as Correctional Officer

Current Address/Place of Employment Corcoran State Prison

List each defendant's full name, official position, and place of employment and address in the spaces below. If you need additional space please provide the same information for any additional defendants on separate sheet of paper.

A. Name _B. Johnson_ is employed as _Correctional Officer_

Current Address/Place of Employment _Corcoran State Prison_

B. Name _R. Zamora_ is employed as _Correctional Officer_

Current Address/Place of Employment _Corcoran State Prison_

C. Name _A. Rocha_ is employed as _Correctional Officer_

Current Address/Place of Employment _Corcoran State Prison_

D. Name _Guiterrez_ is employed as _Correctional Officern_

Current Address/Place of Employment _Corcor State Prison_

E. Name _J. Gonzales_ is employed as _Correctional Lieutenant_

Current Address/Place of Employment _Corcoran State Prison_
(cont. on attachment)B)

**IV. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary. Must be in same format outlined below.)

**Claim 1**: The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom from cruel and unusual punishment, etc.):

See attachment    C

**Supporting Facts** (Include all facts you consider important to Claim 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 1.):

See attachment  C

4.

# ATTACHMENT

## B

On June 3,3014, Plantiff was denied at the third level of appeal, regarding appealing his cancellation of original appeal

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Claim 2:** The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.):

See attachment   C _____

_____

_____

<u>Supporting Facts</u> (Include all facts you consider important to Claim 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 2.):

See attachment  C _____

_____

_____

_____

_____

_____

_____

_____

5.

# ATTACHMENT

C

## FACTS

1.  On January 16, 2013 Plantiff arrived at CSP (Corcoran State Prison) from SVSP (Salinas Vallaey State Prison). Plantiff was housed in 3A05-116.

2.  On January 20, 2013 Plantiff discussed with another inmate in 3A05-12? about housing with him since he study Islam. On January 21, 2013 after Plantiff was cell fed breakfast, an inmate approached him from within the building who was housed in cell 133 (Williams J-43655), discussing how C/O (Correctional Officer) Johnson wanted him to let Plantiff be housed with him, he is supposed to be single-cell status, and his background information (regarding if they would be compatiable or not).

3.  At the conclusion of Plantiff and Williams's discussion it was agreed that they were incompatible with one another.

4.  When C/O Johnson came to Plantiff's cell door to lock his trey-slot, Plantiff was questioned about him being housed with Williams. Plantiff informed C/O Johnson they would not be able to be housed with each other without having serious problems because they were in incompatiable. C/O Johnson still insisted they would have to because his Sergeant wanted his cell.

5.  Plantiff suggested could he be housed with muslim inmate he talked to the day prior to. C/O Johnson said he'll see.

6.  Later around approximately 9:30am-10:00am the building staff ran orientation showers. Plantiff went to take his shower

7.  When Plantiff was returning from taking his shower, he was approached by the building floor officers (C/O Johnson and C/O Gonzales). They both were addressing Plantiff about grabbing his state property and

moving it to cell 133 with inmate Williams.

8. Plantiff once again told C/O Johnson that this move would not be plausible based on their incompatibility; and inquired once again about the consideration of being housed with a muslim inmate he told him about.

9. C/O Johnson told Plantiff to just grab his stuff and move it out the cell.

10. Plantiff grabbed his property as officer's instructed, and brought it out of the cell.

11. Plantiff then asked C/O Johnson what he wanted him to do next?

12. C/O Johnson told him to walk. At this point the buliding's floor officers were joined by two other officers. As Plantiff was walking they were putting on their gloves.

13. They were escorting plantiff towards cell 133. Plantiff realized this and stopped slightly in front of the cell, but more towards the right side of the stairs that lead to the second tier, and told Correctional staff," I told you we're incompatible and that's not going to work", while stating this, Plantiff observed the correctional staff start to corral around him, looking hostile and aggresive, so correctional staff looking determined by any means to get Plantiff into the cell, Plantiff in fear of being harmed suggested," so do you guys want me to cuff up, prone out, put my hands behind my back or what?"

14. They responed "Put your hands behind your back."Plantiff complied.

15. C/O Johnson and other officers (Plantiff is unsure of how many actually grabbed him) grabbed Plantiff by his hair and twisting Plantiff's body and arms vehemently,and sadisicaly attempting to slam Plantiff on the ground by his hair and other areas they were grabbing.

16. Once Plantiff was suddenly snatched, he started stumbling to the ground so he decided to just lay flat out on the ground, so the officers did not feel threaten, or potentially press their alarm and begin striking Plantiff, seeking to justify their actions.

17. As Plantiff laid flat on the ground he extended his arms and legs with his hands open, so he could not be perceived as threatening

18. The officer's then placed their knee in Plantiff's back. Then grabbing his arms and legs twisting them, got off of Plantiff and picked him up, carrying him cell 133.

19. In attempting to readjust holding Plantiff so they could put him in the cell, Plantiff's left leg got caught against the outside of the cell door.

20. C/O Johnson in his rage, noticed this maliciously forced Plantiff into the cell (133) while Plantiff's leg was still stuck on the outside of cell door; making Plantiff's leg fold in an irregular fashion, throwing Plantiff to the ground.

21. Immediately as Plantiff hit the ground and had his standard issued property from CSP thrown on him, C/O Johnson closed the door,and told Plantiff while placing his hands on opposite sides of each other on the outside of the frame of the cell door and said, " I told you, you should've just went in".

22. Plantiff in extreme pain, hopped to the door on one leg saying," I'm going to sue your dumb ass," as Johnson walked away.

23. Soon the building staff ran the day room for inmates, while Plantiff yelled through the cell door for someone to assist him in getting him a medical slip.

24. Inmate Daniels (F-18184) returning to the building from dialysis, heard Plantiff and went to the cell Plantiff was in, and listened to him

explain the incident that happened between him and the correctional staff.

25. Plantiff then asked Daniels if he could get Plantiff a medical request form (CDC 7362). Plantiff filled this slip out and had some one turn it in immediately.

26. Shortly after this Inmate Williams had returned to the building, where stod outside the cell (133), while the cell door was closed, speaking to C/O Johnson. He confronted C/O Johnson about forcing Plantiff in his cell, and demanded to speak to his Sergeant.

27. Around approximately 12:00pm C/O Johnson asked Plantiff "what is it going to be?" and Plantiff responeded, "I told you we're incompatiable." C/O Johnson then order Plantiff to turn around and 'cuff-up'. Plantiff complied.

28. Plantiff was then pulled out of the cell with his hands in hand cuffs.

29. Sergeant Gonzales then came in and accompanied C/O Johnson in escorting Plantiff to the program office.

30. As they were escorting Plantiff to the program office, Sgt. Gonzales kept threatening and harrassing Plantiff about not going into the cell with Williams.

31. When Plantiff reached the program office, he was placed in the program office's holding cage, where he stayed in there for awhile being forced to stand due to how small the holding cage was.

32. Sgt. Gonzales then came into the area where Plantiff was being kept and asserted that Plantiff is having 'safety concerns'.

33. Plantiff unfamiliar with this term, told the sergeant," I don't know anything about any safety concerns, I'm just incompatible [with Williams]".

34. The Sgt. Gonzales responded, "Well to me that sounds like you have 'safety concerns'.

35. Plantiff in fear that Sgt. Gonzales was trying to place him in SNY (sensitve needs yard), he reasserted to Sgt. Gonzales that he did not have safety concerns, he was just incompatible.

36. Sgt. Gonzales told Plantiff if he did not go into the cell with Williams then the Sergeant was going to send him to Ad-seg and say that Plantiff has safety concerns.

37. Plantiff being of fear to be classified as SNY, just agreed to go into the cell with Williams

38. Plantiff, in severe pain in his left leg and foot, requested to see a nurse before anything.

39. Sgt. Gonzales agreed.

40. A significant amount of time went by. As Plantiff was forced to stand in this cage no bigger than half of a telephone booth his pain became more intense. He continuously called officers to help him get the nurse's help, finally after several people he was successful.

41. When the officer came into the cage area, Plantiff asked him to get a nurse, and he did.

42. At 1:25pm the nurse (LVN) from facility A yard came to Plantiff in the cage he was in and documented his injuries.

43. The nurse questioned Plantiff on how he received his injuries. Plantiff then informed her that he received his injuries from correctional staff trying to harm him and forcing him in the cell.

44. The nurse immediately informed higher authorities and documented staff misconduct.

45. Sgt. Gonzales then returned where Plantiff was at saying, "So you're saying my staff committed misconduct against you, huh? We

take these things very serious".

46. Plantiff was perplexed at the Sergeant's comment, when he had already told the Sergeant how he received his injuries.

47. Sgt. Gonzales continued,"Well you're filing misconduct on my staff so I've got to send you to adminstrative segregation."

48. Plantiff questioned him about his promise not to send Plantiff to ad-seg since he said he'll go into the cell with Williams.

49. The Sergeant replied, 'Well we can't do that now since you filed a staff misconduct complaint'.

50. Plantiff then explained to the sergeant that he didn't do nothing but just tell the nurse the truth about how he received his injuries, and begged the sergeant not to send him to ad-seg.

51. The sergeant told Plantiff it was too late and that Plantiff should not have said anything. He then told Plantiff ' maybe if when Plantiff gets back to ad-seg he can say he made a mistake'.

52. After several hours, Plantiff was tooken to ad-seg later that night.

53. The very next morning around 8:00am Plantiff was pulled out of the cell, by a sergeant and another correctional staff. They stated there

54. They stated they were there on behalf of the Sgt. Gonzales from A yard.

55. They stated how Sgt. Gonzales wanted Plantiff to drop the staff misconduct complaint, and Plantiff can come back to the yard and this could be as if it didn't happen. If not then Plantiff would receive a cdc-115, be transferred to another prison, and there would be no telling how long Plantiff would stay in ad-seg.

56. Plantiff considered the offer because of his fear of the consequences He replied to them saying why he could not drop the complaint due to:

1) He gave C/O Johnson and correctional staff an alternative way
that was peaceful and didn't involve any physical altercation; 2)
because of his religious beliefs of standing against oppression; 3)
He heard how C/O Johnson harms inmates like this normally; and 4) He
can't allow him to get away hurting him. Plantiff was then sent back
to his cell.

57. Later within that same day Plantiff had been interviewed and recorded
talking to Correctional staff and showing them how he obtained his
injuries; he also seen the psych.

58. The very next day Plantiff received a cdc-115 from C/O Scaife. She
then asked him if he had any questions or witnesses.

59. Plantiff gave C/O Scaife a list of cells and questions to ask
witness and staff.

60. She responded,"this way too much"

61. Plantiff then let her know how important it qas that she ask questions
and contact witnesses.

62. C/O Scaife returned with her results from her investigation. As C/O
Scaife was leaving from Plantiff's cell after giving him her report,
Plantiff realized as he reviewed her report and his copy of questions
and cells he wanted questioned, that she did not do as he had asked.
Neglecting him his due process to be adequate.

63. By this time Plantiff had seen the pysch once more.

64. After Plantiff had been in ad-seg for approximately two or three
weeks he was brought before the committee in ad-seg. Initially he
was set to be transferred, until he had let Associate Warden Jennings
(at the time) know about his desire to be there at that prison, how
he was only there 4½ days on orientation still, he's a programmer
and wasn't trying to cause any problems, he just was saying he was

just trying to find someone he was compatible that wouldn't give him any problems in practicing his religious obligations as a muslim. He also informed Jennings of the incident that took place and how he sustained an injury from it and it was recorded.

65. Associate Warden Jennings unaware of this, told Plantiff 'to hold on, because he's going to check out this video and Plantiff might not be going anywhere.

66. Soon later Plantiff was released from ad-seg back to facility A yard on the condition that he was promised that he would not be harmed or worried about C/O Johnson or other staff trying to harm him.

Plantiff's 8th Amendment Constitutional Right was
violated by Defendant Johnson and Zamora by using
unnecessary and excessive force.

67. Plantiff refers to and incorporates by refrence herein the allegations
of paragraph 1 through 22 inclusive.

68. Defendant Johnson committed unnecessary and excessive force. This
force was applied maliciously and sadistically, demonstrating
unnecessary and wanton infliction of pain. When defendants delibrately
decided to cause some type of harm to Plantiff. As a result of the
defendant's actions, he caused injury Plantiff by snatchingh his hair
twisting his arms and legs, and harming Plantiff's ankle ( see exhibit
A) by consciously throwing and forcefully pushing Plantiff in the cell
with many metal and sharp objects in it.

69. Defendant Zamora (approximately "6'4" , 320lbs) committed excessive and
unecessary force. Defendant Zamora was the other officer who assisted
defendant Johnson in attempting to slam Plantiff on the ground, twisting
plantiff's arms and legs, placing his knee in Plantiff's back, and
holding Plantiff in a position to allow Defendant Johnson to execute his
assault.

70. Plantiff suffered an ankle and leg injury, and severe pain in these
areas and his back, his head, etc... (see Exhibit A and B).

71. Plantiff suffered mental and emotional distress (see Exhibit D).

72. Defendants acted despicably, knowingly, willingly, and maliciously, or
with reckless or callous disregard for Plantiff's federally protected
rights entitling Plantiff to an award of exemplary and punitive
damages.

Plantiff's 8th Amendment Constitutional Right was
violated by Dendant Rocha, Guiterrez, John Doe, and
Zamora by being deliberately indifferent.

73. Defendant Guiterrez stood near the podium and refused to intervene or
reprimand Johnson and Defendant Zamora as they assaulted Plantiff,
using excessive and unnecessary force when forcin Plantiff in the cell
(refer to facts 7 through 22, regarding what defendant was deliberately
indifferent towards).

74. Defendant Rocha observed Defendant Johnson and Zamora physically assault
Plantiff from the control booth, and refused to interveneve verbally or
physically ceasing defendant Johnson and Zamora's physical assault
(refer to facts 7 through 22, regarding what defendant was deliberately
indifferent towards).

75. Defendant John Doe observed Johnson and Zamora physically assault
Plantiff from floor staff's office and refused to intervene physically
or verbally ceasing defendants Johnson and Zamora's physical assault
(refer to facts 7 through 22, regarding what defendant was deliberately
indifferent towards).

76. Defendant Zamora was deliberately indifferent with observing and
assisting Defendant Johnson in assaulting Plantiff. Zamora partook in
Plantiff's assault (refer to facts 7 through 22, regarding what defendant
was deliberately indifferent towards).

77. As a result Plantiff suffered from multiple injuries, and mental and
emotional distress (see Exhibit A and D).

Plantiff's 1st Amendment

Plantiff's 1st Amendment Constitutional Right was
violated by DDefendant Gonzales, Johnson, Zamora, and
Rocha by retaliating against defendant for filing
grievance

78. Plantif

78. Plantiff refers to incorporates by reference herein the allegations of Paragraphs 1 through 58 inclusive.

79. Defendant Gonzales retaliated against Plantiff by sending him to Adminstrative Segregation stating he had safety concerns in spite because Plantiff excercised his right to file a staff misconduct complaint. As a result Plantiff was chilled by Sgt Gonzales actions and went to see Psych about this fear from illegitmate practices.

80. Defendant Johnson falsified a cdc-115, due to Plantiff telling correctional officers who came to visit him on behalf of Sgt. Gonzales that he was not going to drop staff misconduct allegations. Officers who came to see Plantiff expressed to him that Sgt. Gonzales said if Plantiff did not drop complaint he would stay in adminstrative segragation, be given a cdc-115, and possibly be transferred. This resulted in Plantiff's mental and emotional distress (see exhibit D).

81. Defendant Zamora retaliated against Plantiff by falsifying a cdc-115 in response to Plantiff filing a staff misconduct complaint, excercising his rights. This was done illegitimately, chilling Plantiff and causing him mental and emotional distress (see Exhibit D).

82. Defendant Rocha retaliated against Plantiff by falsifying a cdc-115 in response to Plantiff filing a staff misconduct complaint, exercising his right. As result Plantiff suffered from this staff misconduct complaint where Plantiff was chilled and seen the Psych about his mental and emotional distress (see Exhibit D). This false cdc-115 was done only in spite, not to further a legimate correctional goal.

83. Defendants acted despicably, knowingly, willfully, and maliciously, or with reckless or callous disregard for Plantiff's federally protected rights entitling Plantiff to an award of exemplary and punitive damages.

**V. Relief**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Wherefore, Plantiff Buckley prays for judgement against defendants as

follows: 84.For compensatory damages, according to proof

85.For Punitive damages;

86.For reasonable attorney fees pursuant to 42 U.S.C. §1988

87.For cost of the suit;and

88.For such other and further relief as the court may deem just
and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 11/15/17        Signature of Plaintiff: _Rodney C. Buckley_

(Revised 4/4/14)

6.

# EXHIBIT COVER PAGE :

### EXHIBIT:  *A*

DESCRIPTON OF THIS EXHIBIT: *Medical Report of Injury*

NUMBER OF PAGES FOR THIS EXHIBIT:  *1*  PAGES

## JURISDICTION:   ( CHECK ONLY ONE )

_____ MUNICPAL COURT

_____ SUPERIOR COURT

_____ APPELLATE COURT

_____ STATE SUPREME COURT

___√___ UNITED STATES DISTRICT COURT

_____ UNITED STATES CIRCUIT COURT

_____ UNITED STATES SUPREME COURT

_____ CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,  602 EXHIBIT.

_____ OTHER:_____

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE**

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | | | | DATE |
|---|---|---|---|---|---|---|
| CSP Cor1 | 3A | USE OF FORCE | INJURY   UNUSUAL OCCURRENCE | ON THE JOB INJURY   PRE AD/SEG ADMISSION | | 1-21-13 |

| THIS SECTION FOR INMATE ONLY | NAME   *LAST*   Buckley, | *FIRST*   Rodney | CDC NUMBER   AF9358 | HOUSING LOC.   3AF 133 | NEW HOUSING LOC.   N/A |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME   *LAST*   N/A | *FIRST* | BADGE #   N/A | RANK/CLASS   N/A | ASSIGNMENT/RDO   N/A |
| THIS SECTION FOR VISITOR ONLY | NAME   *LAST*   N/A | *FIRST* | *MIDDLE* | DOB   N/A | OCCUPATION   N/A |
| | HOME ADDRESS | CITY | STATE   N/A | ZIP | HOME PHONE   N/A |

| PLACE OF OCCURRENCE   3AF-133 | DATE/TIME OF OCCURRENCE   1-21-13 - | NAME OF WITNESS(ES)   N/A | | | | | |
|---|---|---|---|---|---|---|---|
| TIME NOTIFIED   1322 | TIME SEEN   1325 | ESCORTED BY   on site | MODE OF ARRIVAL (circle)   LITTER   WHEELCHAIR   AMBULATORY   ON SITE | | AGE   25 | RACE   Blk | SEX   Male |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

*my ankle hurts & knee also hurt states twisted during movement of cell, use force escorting him (as per inmate)*

| INJURIES FOUND?   YES / NO | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

| O.C. SPRAY EXPOSURE? | YES / NO |
|---|---|
| DECONTAMINATED? | YES / NO |
| Self-decontamination instructions given? | YES / NO |
| Refused decontamination? | YES / NO |
| 15 min. checks | |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME   N/A | PHYSICIAN NOTIFIED/TIME   N/A |
|---|---|
| TIME/DISPOSITION | |



| REPORT COMPLETED BY/TITLE   (PRINT AND SIGN) | BADGE # | RDO |
|---|---|---|

RTC @ 1320

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator (only work related injury)

# EXHIBIT COVER PAGE :

### EXHIBIT:   B

DESCRIPTON OF THIS EXHIBIT: Health Care  Service Request Form

NUMBER OF PAGES FOR THIS EXHIBIT: 1   **PAGES**

## JURISDICTION:   ( CHECK ONLY ONE )

_____ MUNICPAL COURT

_____ SUPERIOR COURT

_____ APPELLATE COURT

_____ STATE SUPREME COURT

___✓__ UNITED STATES DISTRICT COURT

_____ UNITED STATES CIRCUIT COURT

_____ UNITED STATES SUPREME COURT

_____ CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,   602 EXHIBIT.

_____ OTHER:_____

9571956

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)          **HEALTH CARE SERVICES REQUEST FORM**          DEPARTMENT OF CORRECTIONS

| PART I:  TO BE COMPLETED BY THE PATIENT |
|---|
| *A fee of $5.00 may be charged to your trust account for each health care visit.* |
| **If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.** |

REQUEST FOR:      MEDICAL ☒      MENTAL HEALTH ☐      DENTAL ☐      MEDICATION REFILL ☐

| NAME Buckley, A | CDC NUMBER AA-9358 | HOUSING |
|---|---|---|

PATIENT SIGNATURE  *Rodney P. Buckley Jr.*                                     DATE 1-22-13

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had
The Problem) I need emergency medical attention. I told the Officer
Johnson & Gutirez on 2nd watch I was incompatiable with
a cellie, when I stated willing to comply with the following proceed
-ings in opposing to go to a cell, him several other officer grabbed me by
my hair, twisted my ankle, put their knee in my back, etc... I'm feeling serious pain

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON
BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

| PART III:  TO BE COMPLETED AFTER PATIENT'S APPOINTMENT |
|---|
| ☐ Visit is not exempt from $5.00 copayment.  (Send pink copy to Inmate Trust Office.) |

| PART II:  TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE | |
|---|---|
| Date / Time Received:   JAN 22 2013 | Received by:  B. Savage RN |
| Date / Time Reviewed by RN: | Reviewed by:  B. Savage RN |

S:                                              Pain Scale:   1   2   3   4   5   6   7   8   9   10

faxed to ASU 1-23-13
#8136

O:     T:       P:       R:       BP:            WEIGHT:

A:

P:
☒ **See Nursing Encounter Form**   Musculoskeletal

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (IMMEDIATELY) | URGENT ☐ (WITHIN 24 HOURS) | ROUTINE ☒ (WITHIN 14 CALENDAR DAYS) |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY  B. Savage, RN | | NAME OF INSTITUTION  CCRCSP | |
| PRINT / STAMP  B. Savage, RN | SIGNATURE / TITLE  B. Savage RN (B.Savage) | | DATE/TIME COMPLETED  JAN 23 2013 |

CDC 7362 (Rev. 03/04)

# EXHIBIT COVER PAGE :

**EXHIBIT:** _____ *C* _____

**DESCRIPTON OF THIS EXHIBIT:** *Psych Evaluation / Mental Health Evaluation*

**NUMBER OF PAGES FOR THIS EXHIBIT:** _____ **PAGES**

❖ <u>JURISDICTION:</u>  ( CHECK ONLY ONE )

➢ **MUNICIPAL COURT**

➢ **SUPERIOR COURT**

➢ **APPELLATE COURT**

➢ **STATE SUPREME COURT**

➢ **UNITED STATES DISTRICT COURT**

➢ **UNITED STATES CIRCUIT COURT**

➢ **UNITED STATES SUPREME COURT**

➢ **CALIFORNIA DEPARTMENT OF CORRECTION, 602 EXHIBIT**

➢ **OTHER:** _____

**Interdisciplinary Progress Notes - Primary Clinician Crisis Evaluation**
CDCR MH-7230E (Rev. 01/12)

| Comments (Use SOAPE format) |
| --- |

This Emergency Room Psychologist / All Institutional Emergency Oncall Pager Duty Responder rec'd a urgent referral from LPT Perez regarding a GP LOC I/P who is a new transfer into ASU & reptd distress & request to speak with a "case manager" (Mental Health Clinician).

This psychologist responded and went onto the housing tier, explained purpose of contact and inquired if I/P desired to come out for 1:1 confidential intervention / assessment. I/P was single celled, and upon initial approach he was sitting on his bed covered with a blanket for warmth and reading a novel. He was oriented x 4, cooperative, calm demeanor, mood mildly to moderately anxious, slight dysphoria but congruent affect, maintained eye contact, and exhibited both linear and goal directed thought. He denied any current A/Hs or V/Hs. Upon direct query by this psychologist, he denied any current S/I or H/I.

I/P declined to be pulled out by Escort COs, and preferred to speak with this psychologist at the door (CF) and explained why he is currently distressed and seeking help. I/P Buckley stated that the LPT (Perez) was doing routine rounds & inquired if he was "ok", he expressed that he was "stressing" (however from I/P's description, it was as a matter of fact, not expression of emergent crisis; yet LPT made urgent referral to MH Dept & subsequently institutional oncall pager response activated). I/P Buckley stated that he is a recent transfer here to CSP-COR and was initially excited about it "a better prison and will be closer to my family" but he was on orientation status & was being pressured to cell up with another I/M. I/P felt they were incompatible; however it was unclear if there was a battery between them, in some way, there was a disruption & Custody had to respond. I/P Buckley is alleging that there was excessive force used on him by a specific officer & "his buddies" thus he has made a staff complaint which is being investigated. He is either in ASU for that matter / protective custody or due to possible assault / 115 charges; however I/P expressed that he knows that he is going to be transferred out of this (COR) facility soon which will place him away from family & prior proactive goals he had. He showed this psychologist his left foot exposed & stated that it was injured in staff assault (psychologist advised those matters to be addressed with Medical on Form 7219 & ISU dept). I/P stated that he is really distressed rt now because he does not have any of his property in cell from this move last night and has significant Legal paperwork he needs urgently & is in the middle of working on an appeal deadline. He expressed that if he misses the Appeal deadline, then will spend the rest of his life in prison, etc. Advised I/P that he needs to send inmate request to staff to interview directed to ASU Bldg Sgt, his CCI, and the Property Officer to address this. I/P did not request any additional MH tx or services, and he stated that he wanted to see if Psychologist was able to get him his paperwork & to make sure his complaints / allegations were documented.

No emergent MH concerns, I/P mildly to moderately distressed with situational anxiety but coping fairly effectively & attempting civil, reasonable, appropriate behavior / problem solving. No concerns regarding S/I or H/I, difficulty coping in ASU environs at this time.

This psychologist obtained name & phone ext of ASU CCI Maxfield at ext 5334 (or 5340) & will advise of I/P concerns, additionally this psychologist advised the onduty Property Officer of his concerns & verified that the only current property in possession was shoes (may be contained by ISU or sent over later). Property Officer stated that he will follow up with same.

No further MH tx measures required at this time.

☐ Page 2   (Note continued on page 2)

| Date: | 01-22-2013 | Time: | 11:15 | Housing: | ASU-135 |
| --- | --- | --- | --- | --- | --- |
| Institution: | CSP-COR | Clinician: | Dr. Fowler, Psy.D. | Signature: | |

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | |
| --- | --- | --- | --- |
| ☐ TABE score ≤ 4.0 | ☐ Additional Time | ☒ P/I asked questions | |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I summed information | Last Name: Buckley |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | First Name: Rodney      MI: |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not Reached* ☒ Reached | CDC # AA9358 |
| ☒ Not Applicable | ☐ Other* | *See chrono/notes | DOB |

4. Comments: Per DECS of 01-22-2013 TABE = 9.4  DDP = NCF

State of California — Department of Corrections and Rehabilitation
Interdisciplinary Progress Notes - Primary Clinician Crisis Evaluation
CDCR MH-7230E (Rev. 01/12)
Case 1:17-cv-00102-LJO-BAM    Document 14    Filed 11/27/17    Page 29 of 35

| Comments (Use SOAPE format) |
| --- |

Rec'd URGENT REFERAL from ASU as the dual responder for Emergency Room Psychologist and ALL CORCORAN Institutional Emergency Oncall Responder sent by LPT Mendivilirn.

I/P completed a Health Care Services Request Form directed to Mental Health expressing that he is having "mental & emotional stress" since his transfer to COR on Jan 16, 2013 & then sent to ASU on Jan 21st, and appears to be having additional difficulty coping with new environmental setting.

Reviewed MHTS, Inmate Locator, DECS, & briefly eUHR prior to going over to ASU for I/M contact. It is noted that I/M Buckley had been seen on a prior crisis risk assessment contact on 1-22-2013 by this ER Psychologist & clearly expl'd presenting issues / initial stressors in detailed Progress Note 7230 of that date. I/P is a 25 yr old Black male, DOB 5-3-1987, with a sentence of LWOP MEPD = 11-01-2065 with Controlling Offenses of 2 counts of 2nd degree Murder, 2 counts of discharge of a firearm with Death to Great Bodily Injury. He has been in CDCR initially placed at KVSP since 10/2010, then transferred to SVSP until transferred to CSP-COR on 1-16-2013. Per MHTS his last GAF was 70 with Axis I Dx = V71.09.

Went to ASU and at CF saw I/M, he remains single celled. He was alert & coherent, o x 4, cooperative, pleasant demeanor but mixed / constricted affect with both moderately anxious to dysphoric mood. He advised that he wished to come out and speak with MH, he inquired if this institution provided services such as his other locations such as "I don't know what they call them, stress management tools or coping skills, or groups where you can talk about your problems.....?". Advised I/M about 1:1 tx session option in confidential setting at this time.

I/P began to express all the significant stressors he has been under since entering the legal system with this case. His first time ever incarcerated, stated he was married, has a child, and now got life sentence that he is fighting, wife has left him, lost his family (reptd that his father, great grandmother, grandmother & grandfather have all died since in on this sentence) and that he was trying to lead a positive life prior to legal case of entering the military and "has been one hurdle, disaster, problem after the other, trying to make it, now fighting his case, etc.........". I/M was discussing his difficulties since arrival at this institution in which he was trying to acclaimate, was on Orientation status for approx 4 days and told by Custody to cell up with someone, found that person incompatible as he was not Muslim and had significant personality differences, I/M explained respectfully why wouldn't work & later stated that specific Custody officers abused their authority & utilized inappropriate force, threw him into a cell & generated physical injuries to him. He wished to file appropriate complaints & was being misportraited as having "safety issues" vs being incompatible. He reptd his injuries to the nurse at Program Office and was subsequently placed here in ASU due to having made allegations of staff misconduct. He additionally states that he is extremely stressed because he has pending dates on doing his court appeal, doesn't have his property, missing law office time, & is being told that he will be put up for transfer to another prison, etc. I/P denied any current A/Hs, V/Hs, S/I or H/Is.

Custody interrupted approximately 25 mins into session, stating that it has to end because of security issues, Emergency Count being conducted & all inmates must be returned to housing now. Explained same to I/M and that Psychologist will come back later to conclude session when possible, most likely tomorrow. He reptd understanding same.

Continued follow up required - need to conduct completed session & determine clinical risk exposures / tx recommendations.

☐ Page 2   (Note continued on page 2)

| | | |
| --- | --- | --- |
| Date: | 02-05-2013 | Time: | 12:45 | Housing: | ASU-135 |
| Institution: | CSP-COR | Clinician: | Dr. Fowler, Psy.D. | Signature: | |

**1. Disability Code:**
☐ TABE score ≤ 4.0
☐ DPH ☐ DPV ☐ LD
☐ DPS ☐ DNH
☐ DNS ☐ DDP
☒ Not Applicable

**2. Accommodations:**
☐ Additional Time
☐ Equipment ☐ SLI
☐ Louder ☐ Slower
☒ Basic ☐ Transcribe
☐ Other*

**3. Effective Communication:**
☒ P/I asked questions
☒ P/I summed information
**Please check one:**
☐ Not Reached* ☒ Reached
*See chrono/notes

Last Name: Buckley
First Name: Rodney    MI: C
CDC # AA9358
DOB 05-03-1987

**4. Comments:** Per DECS 2-5-2013 TABE=9.4 DDP=NCF

**Interdisciplinary Progress Notes - Primary Clinician Crisis Evaluation**
CDCR MH-7230E (Rev. 01/12)

| Comments (Use SOAPE format) |
| --- |

Met with I/P Buckley for continuation of interrupted Crisis Intervention session from yesterday due to Institutional Emergency Fog Count. I/P came out for 1:1 contact in confidential setting, ASU hall closet treatment area provided.

He acknowledged having a moderate decrease in anxiety and depression levels due to interactions yesterday with Psychologist / Mental Health services and knowledge that he would be followed up with today.

He denied any current sxs of S/I, H/I, A/Hs or V/Hs. He presented with milder levels of anxiety and depression but vocalized that it was helpful being able to process his current feelings, talk about the issues that were overwhelming him, stressors with time constraints on his appeal (LIFE case) & awaiting both access to his materials & access to the Law Library, worry about pending investigation for excessive force with Custody Mbr, pending status of where he may be transferred to - how that would impact his possibilities for visitation with his mother and daughter in SAC area, and trying to manage his stress levels while still being held in ASU environs. He inquired about being able to access MH services. Advised him that if in another emergent situation while here in ASU that he can alert any staff mbr of request, can write inmate request to staff to MH, or advise the Psych Tech asap ; however if possibly requires continued MH svcs he may need to be considered for a LOC change. I/P understood and expressed appreciation of same. Executed crisis interventions and positive cognitive reframe strategies with I/P Buckley for session.

No further followup necessitated at this time. I/P remaining at GP LOC and fairly stable with new environmental & situational stressors.

☐ Page 2  (Note continued on page 2)

| Date: | 02-06-2013 | Time: | 11:00 | Housing: | ASU-135 |
| --- | --- | --- | --- | --- | --- |
| Institution: | CSP-COR | Clinician: | Dr. Fowler, Psy.D. | Signature: | |

| 1. <u>Disability Code:</u> | 2. <u>Accommodations:</u> | 3. <u>Effective Communication:</u> | |
| --- | --- | --- | --- |
| ☐ TABE score ≤ 4.0 | ☐ Additional Time | ☒ P/I asked questions | |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I summed information | Last Name: Buckley |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | First Name: Rodney    MI: |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not Reached* ☒ Reached | CDC # AA9358 |
| ☒ Not Applicable | ☐ Other* | *See chrono/notes | DOB |
| 4. Comments: | | | |

State of California
Mental Health ICC Chrono
CDCR 128-MH10

Department of Corrections and Rehabilitation

Inmate Name: _Buckley, R_____ CDC Number: _AB 9358_ Housing: _ASU-1_ Institution: _COR_
(Last, First, MI)

The Institutional Classification Committee (ICC) met for the purpose of ___Initial___ review on this day and the inmate's Central File was reviewed. The inmate ☒appeared ☐refused to appear for an interview before the ICC on this date.

BEHAVIORAL OBSERVATIONS:
☒Yes ☐No   Grooming was appropriate
☒Yes ☐No   Speech was intelligible
☒Yes ☐No   Comprehension process was adequate   Other: _TABE 9.4_

MENTAL HEALTH TREATMENT RECOMMENDATION:
☒ No treatment needed at this time.

☐ Inmate is currently participating in the MHSDS.      Comments: _____

☐ Current records review reveals ☐evidence ☐no evidence of change in mental health needs since:  (Check box below)
   a. ☐ Previous SHU Mental Health Screening Chrono dated: _____
   b. ☐ Most Recent IDTT recommendations dated: _____

_1-31-13_         _J. Gonzales, EdD_    _SR. Psychologist (A)_    [signature]
Date              Clinician's Name (Print)         Title                    Signature

Distribution:   Pink–Central File      Blue–UHR Mental Health Section      White–Mental Health Department File, Inmate

Confidential Saved 2013-05-15

State of California
**Mental Health Screening Chrono**
CDCR 128-MH1 (Rev. 02/12)

Department of Corrections and Rehabilitation

| Inmate Name: | Buckley, Rodney | CDC Number: | AA9358 | Housing: | ASU-135 | Institution: | CSP-COR |

This Inmate has completed a standard Mental Health Screening and:

☒ Screened Negative: Not referred for further evaluation          ☐ Screened Positive: Referred for further evaluation

☐ Was unable or unwilling to participate in screening; refer for further evaluation.          ☐ Screened Positive: Referred for crisis care

☐ This inmate is non-English speaking. Primary Language: | N/A |

☐ Interpreter Used? ☐ Yes ☒ No          Name: | N/A |

Date: | 1-22-13 |          Staff Name: | M.Perez |          Title: | PT |          Signature: |

Distribution:  Pink – Central File;  White – Unit Health Record;  Canary – Inmate

Confidential Saved 2013-05-15T19:04:50Z

STATE OF CALIFORNIA
**MENTAL HEALTH REFERRAL CHRONO**
CDCR 128-MH5 (Rev. 04/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

NAME Buckley, Rodney    CDC # AA9358   INSTITUTION CSP/Corc   HOUSING ASU-135
(Last, First, MI)

☐ Routine   ☐ Urgent   ☐ Emergency (Contact Mental Health Services immediately)

☐ Non English Speaking Language: _____

REASON FOR REFERRAL: (Please check **the primary reason(s)** and give an example or comment on the line below)

☐ History of Psychiatric care needs re-assessment        ☐ Needs Psychotropic medication review
☐ Expresses suicidal ideation or recent attempts (Emergency)   ☒ Exhibits bizarre behavior (describe below)
☐ Incapable of caring for self / poor grooming          ☐ Poor appetite / sad / fearful / nervous
☐ Confused / disoriented / withdrawn               ☐ Unpredictable / bothers others
☐ Hostile / assaultive / poor self control             ☐ Hears things / sees things / imagines things
☐ Taken advantage of by other inmates              ☐ Insomnia / sleeps too much
☐ Poor attention span / difficulty following directions
☒ Other (Describe): I/P inmate requesting to speak c a case manager.

JAN 22 AM 9:44

Napero2              P-1       5016-0611   0330   1-22-13
REFERRED BY (Print Name)      TITLE         PHONE / EXTENSION      TIME      DATE

**Received at Mental Health By:** _____   **Time:** _____   **Date:** _____   Assigned to: _____

Confidential Saved 2013-05-15T19:04:50Z

Copies and Distribution to:  MH Program; Correctional Counselor; and Unit Health Record

| DATE | TIME | COMMENTS (USE S.O.A.P.E FORMAT) |
|---|---|---|
| | | Special Communication Assistance Needs (SCAN)   ☒ Not Indicated   ☐ Indicated |
| | | If Indicates, SCAN due to: ☐ Armstrong/LD ☐ Non-English Language ☐ Organicity ☐ Clark ☐ Other |
| 1-22-13 | 0840 | Inmate appeared to be in good health, appeared slightly distress but was able to maintain a pleasant and appropriate conversation. Per inmate request he would like to speak with a case mananger in the mental health department. Denies any SI/HI. Referral Chrono put in will continue to monitor. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | M Perez P1 |
| | | |
| | | |
| | | |
| | | Communication Techniques Used: ☒ Spoke Slowly  ☒ Read Materials  ☒ Rephrased Sentences and Questions |
| | | ☒ Simple English  ☐ Verified Patient Understood What Was Said  ☐ Other |
| | | Results: Effective Communication: ☒ Achieved  ☐ Not Achieved |

| Institution | Clinician | Bed Number | CDC Number, Name (last, First, M) and Date of Birth |
|---|---|---|---|
| CSP-COR | M.Perez PT | ASU-135 | |

NAME: Buckley, Rodney

INTERDISCIPLINARY PROGRESS NOTES
SPECIAL COMMUNICATION ASSISTANCE NEEDS
CDCR 7230A-MH (12/07)
Confidential Client / Patient Information

CDC#: AA9358

DOB: 5-3-87

LOC: GP

STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS AND
REHABILITATION

Confidential Saved 2013-05-15T19:04:50Z

# DECLARATION AND PROOF OF SERVICE BY MAIL

I, _ROONEY C. BUCKLEY JR._ DECLARE UNDER PENALTY OF PERJURY THAT I AM OVER THE AGE
OF 18 YEARS, { } AND I AM A PARTY TO THIS CAUSE OF ACTION, { } AND I AM NOT A PARTY TO THIS
CAUSE OF ACTION. I RESIDE IN SOLANO COUNTY, P.O. BOX 4000. CELL _224_ VACAVILLE,
CALIFORNIA 95696- 4000.

- THAT ON  _11/15/17_  I SERVED THE ATTACHED DOCUMENTS ENTITLED:

    _CIVIL COMPLAINT AMENDED §1983_

ON THE PERSONS NAMED BELOW BY PLACING A TRUE COPY OF THE DOCUMENTS INTO A FIRST
CLASS POSTAGE- PAID ENVELOPE AND SUBMITTING IT TO CUSTODY OFFICIALS FOR DEPOSITING IN THE
UNITED STATES MAIL, CONSISTANT WITH THE **"PRISON MAILBOX RULE" (HOUSTON V. LACK, 487 U.S.**
**266(1988))** AT: CALIFORNIA STATE PRISON- SOLANO, VACAVILLE, CALIFORNIA. 95696- 4000,
ADDRESSED AS FOLLOWS:  _UNITED STATES DISTRICT COURT_
_EASTERN DISTRICT OF CALIFORNIA_
_FRS 2500 TULARE STREET, Room 1501_
_FRESNO, CA              93721_

I DECLARE UNDER PENALTY OF PERJURY, UNDER THE LAWS OF THE STATE OF CALIFORNIA,

THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: _11/15/17_

SIGNED: _Rodney C. Buckley Jr._