# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY C. BUCKLEY, JR., <br><br> Plaintiff, <br><br> v. <br><br> B. JOHNSON, et al., <br><br> Defendants. | Case No. 1:17-cv-00102-LJO-BAM (PC) <br><br> FINDINGS AND RECOMMENDATIONS REGARDING COGNIZABLE CLAIMS AND DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS <br><br> (ECF No. 14) <br><br> **Fourteen (14) DAY DEADLINE** |

Plaintiff Rodney C. Buckley, Jr. ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's first amended complaint (FAC), filed on November 27, 2017, is currently before the Court for screening. (ECF No. 14.)

**I.    Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at the California State Prison, Solano in Vacaville, CA. The events at issue in this complaint took place outside of Cell 133 at Corcoran State Prison in Corcoran, CA while Plaintiff was housed in 3A05-116 on January 22 and 23, 2013. Plaintiff names the following defendants in this action: B. Johnson, Correctional Officer; R. Zamora, Correctional Officer; A. Rocha, Correctional Officer; Guiterrez, Correctional Officer; J. Gonzales, Correctional Lieutenant; John Doe Correctional Officer.

Plaintiff's allegations are as follows: Plaintiff arrived at Corcoran on January 16, 2013. Two different inmates discussed with Plaintiff whether they should be housed together. Plaintiff discussed with inmate Williams whether to cell together, but determined that they were incompatible. Plaintiff told Defendant Johnson that Plaintiff could not house with inmate Williams

as they are incompatible. Defendant Johnson told Plaintiff that he would have to house with inmate Williams. Plaintiff said he should be housed with a Muslim inmate. On or about January 22, 2013, when Plaintiff came back from the shower, Defendant Johnson told Plaintiff to grab his property from the cell and he was being moved. Plaintiff did so. They walked towards inmate Williams' cell (number 133), other officers joined. When Plaintiff realized this, he stopped slightly in front of the cell towards the right. Plaitniff said that he was not compatible with Williams and then he was surrounded by correctional staff. He asked what they wanted him to do. They ordered him to put his hands behind his back and Plaintiff did.

Defendant Johnson and other officers (Plaintiff cannot determine who) grabbed Plaintiff by his hair and twisting Plaintiff's body and arms vehemently attempting to slam Plaintiff on the ground by his hair. Plaintiff stumbled and decided to lay flat on the ground so as the officers did not feel threatened. He lay on the ground with his arms, hands and legs open. An officer placed a knee in Plaintiff's back and grabbed his arms and legs twisting them and picked him up, carrying him to cell 133. In attempting to readjust their hold of Plaintiff, Plaintiff's leg got caught outside the cell door and Johnson forced Plaintiff into the cell (133) making Plaintiff's leg fold in an irregular fashion, throwing Plaintiff to the ground. Johnson told Plaintiff that Plaintiff should have just gone into the cell. Plaintiff was in extreme pain, hopped to the door as Johnson closed it, and said "I'm going to sue your dumb ass." Plaintiff called for medical help but no one came. Another inmate (Daniels) came to him and gave Plaintiff a medical request form which Plaintiff filled out. Inmate Williams returned and complained about Plaintiff being in his cell.

Later, at about noon, Defendant Johnson cuffed up Plaintiff and took him out of the cell in hand cuffs and was taken to the program office. Sgt. Gonzales was on the escort of Plaintiff with Johnson and kept threatening and harassing Plaintiff about not going into the cell with Williams. Plaintiff was put into a holding cage and had to stand for a while. Later Gonzales asked Plaintiff if Plaintiff had any safety concerns and Plaintiff was concerned that Plaintiff would be sent to sensitive needs yard. Gonzales said that Plaintiff would be sent to Ad-seg, Plaintiff agreed to be housed with Williams. Plaintiff asked to see a nurse because of severe pain in his left leg and good. Gonzales agreed. Plaintiff had to stand in the cage and he called to officers to help him and "after

3

several people" the nurse came at 1:25 p.m. When Plaintiff told the nurse how he got his injuries, due to staff forcing Plaintiff into a cell, the nurse informed higher authorities and documented staff misconduct. Defendant Gonzales said that reports of staff misconduct are taken very seriously. Plaintiff begged not to be put in ad-seg, but Gonzales said that because of a complaint of staff misconduct, Plaintiff had to go to Ad-seg and was taken there about midnight.

The next morning, staff came to Plaintiff's cell and told him that they were there on behalf of Defendant Gonzales. They said the Gonzales wanted Plaintiff to drop the staff misconduct complaint Plaintiff could return to the yard. Plaintiff said he could not drop the complaint. They said that if he did not, he would be issued a CDC-115. Plaintiff explained why he could not drop the complaint. Later that day, plaintiff was interviewed and recorded about how he got his injuries.

Plaintiff also received a CDC-115 from Scaife. Plaintiff gave a list of cells and questions to ask witnesses and staff and she said "this is too much." When Scaife returned from her investigation, she did not do what he had asked for the investigation.

Plaintiff was brought before the committee in Ad-seg, including Associate Warden Jennings, after about 2-3 weeks. Plaintiff explained what happened to him. Soon, Plaintiff was released from Ad-seg to the facility A yard.

Plaintiff's first claim is for excessive force against Johnson and Zamora (who was the other officer who assisted Johnson) when they snatched Plaintiff's hair, twisted his arms and legs and knee in Plaintiff's back and forced him into the cell harming his ankle and leg. Plaintiff suffered emotional distress from the incident and injury.

Plaintiff's second claim is for failure to protect by defendant Guiterrez who was at the podium, Defendant Rocha who was in the control booth, and Defendant John Doe, who was in the floor staff's office, and saw the assault and refused to intervene.

Plaintiff alleges retaliation by Sgt. Gonzales, Johnson, Zamora and Rocha for Plaintiff stating a complaint of staff misconduct. Plaintiff agreed with Sgt. Gonzalez to go cell with inmate Williams so that Plaintiff did not have to go into Ad-seg. Defendant Johnson, Zamora and Rocha violated Plaintiff's first amendment right against retaliation when they fabricated/falsified a CDC-115 against Plaintiff for not dropping the misconduct complaint.

4

Plaintiff seeks compensatory and punitive damages, attorney fees and costs.

### III. Discussion

#### A. Eighth Amendment – Excessive Force

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2005). Prison officials must provide prisoners with medical care and personal safety and must take reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. at 1976 (1994) (internal citations and quotations omitted).

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834.

Plaintiff has alleged a cognizable claim against Defendant Johnson and Zamora for the incident outside of cell 133 and as Defendant Johnson and Zamora moved Plaintiff into the cell. Plaintiff has failed to allege a cognizable claim against any other defendant for excessive force.

#### B. Eighth Amendment – Failure to Protect

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir.2005). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health....' " Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir.1995).

Liberally construing Plaintiff's allegations, Plaintiff states a cognizable claim for failure to protect against Defendant Guiterrez who was at the podium, Defendant Rocha who was in the control booth, and Defendant John Doe, who was in the floor staff's office, and saw the assault and refused to intervene.

### C. Due Process Violation – False Charges

Plaintiff states that he was denied Due Process by Defendant Gonzales when he lied to have Plaintiff placed in Ad-seg and Johnson, Zamora and Rocha for a false 115.

The Due Process Clause of the Fourteenth Amendment protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). To state a claim for the deprivation of procedural due process, a plaintiff must first identify a liberty interest for which the protection is sought. Id. at 221, 2393. Liberty interests may arise from the Due Process Clause or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, id. at 221–22 (citations and quotation marks omitted), and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue. Id. at 222–23 (citing Sandin v. Conner, 515 U.S. 472, 481–84 (1995)). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Id. at 221 (quoting Sandin, 515 U.S. at 484); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

///

6

Plaintiff is informed that he has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct that may lead to disciplinary sanctions. See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989). Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California relying on the case cited above have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983. Lipsey v. Guzman, No. 117CV00896 AWIEPGPC, 2018 WL 1567813, at *4 (E.D. Cal. Mar. 30, 2018) (collecting cases).

With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Wolff v. McDonnel, 418 U.S. 539, 563-71 (1974). As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

Plaintiff cannot state any claim that due process was violated by any officials who made false charges against him. "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015).

### D. First Amendment - Retaliation

Plaintiff alleges that he was placed in Ad-seg. for making a staff misconduct charge.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 F.3d at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Here, Plaintiff states a cognizable claim for retaliation against Defendant Gonzales. Plaintiff alleges he was placed in Ad-seg after he make a staff misconduct complaint and even after he said he would cell-up with Williams. While the elements of whether this action "chilled" Plaintiff and whether no legitimate correctional goal was advanced by placing Plaintiff in Ad-seg are disputable, construing the complaint liberally, Plaintiff has stated claim. The correct inquiry regarding "chilling" is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568–69. Plaintiff does not allege that his speech was chilled, but the adverse actions he suffered would chill a person of ordinary firmness. And he alleges he changed his mind about celling up so as to avoid Ad-seg. Thus, liberally construing the complaint, Plaintiff has satisfied the fourth prong. With respect to the fifth prong, a prisoner must affirmatively allege that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532. Plaintiff's allegation is that he was sent to Ad-seg immediately after alleging staff misconduct. While Defendant may be able to show a legitimate correctional reason for placing Plaintiff in Ad-seg, liberally construing this allegation, Plaintiff states a cognizable claim.

### E. Threats and Harassment

Plaintiff alleges that Defendant Gonzales threatened Plaintiff for not going into the cell with Williams. Plaintiff is informed that verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.

1987). Therefore, Plaintiff fails to state a claim based on verbal harassment or threats.

**F. While in the Cage – Conditions of Confinement and Medical Indifference**

Plaintiff alleges he was forced to stand for a few hours in a small holding cell and while there, he called out for medical assistance to treat his injuries.

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.1998).

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.' " Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) " 'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id.

Plaintiff's claim does not rise to a constitutional level. Standing in a holding cell for a few hours is not a constitutional violation. Further, Plaintiff has not named which defendant(s) forced him to stand in the isolation cage, nor has he alleged facts showing deliberate indifference, nor has he shown a serious medical need. The medical forms attached to the complaint note "slight" injury and redness to his ankle.

### G. Investigation

To the extent Plaintiff is dissatisfied with the outcome or adequacy of an investigation by Schiefe, an inadequate investigation is not a basis for a plausible due process claim. See Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); Page v. Stanley, No. CV 11–2255 CAS (SS), 2013 WL 2456798, at *8–9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to conduct thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular outcome").

### H. DOE Defendant

Plaintiff names John Doe defendant in this action. Unidentified, or "John Doe" defendants, must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe defendant cannot be served by the United States Marshal until Plaintiff has identified him as an actual individual and amended his complaint to substitute names for John Doe. For service to be successful, the Marshal must be able to identify and locate defendants.

### IV. Conclusion and Order

Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies of his complaint, and further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court finds that Plaintiff's first amended complaint states a cognizable claim for (1) excessive force in violation of the Eighth Amendment against Defendants Johnson and Zamora for the incident on or about January 22, 2013, (2) failure to protect in violation of the Eighth Amendment against Defendant Guiterrez who was at the podium, Defendant Rocha who was in the control booth, and Defendant John Doe, who as in the floor staff's office, and saw the assault and refused to intervene in the incident on or about January 22, 2013, and (3) a claim for retaliation

in violation of the First Amendment against Defendant Gonzales for placing Plaintiff in Ad-seg on or about January 23, 2013, but fails to state any other cognizable claims.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed November 27, 2017, (ECF No. 14), for (1) excessive force in violation of the Eighth Amendment against Defendants B. Johnson, Correctional Officer, and R. Zamora, Correctional Officer, for the incident on or about January 22, 2013, (2) failure to protect in violation of the Eighth Amendment against Defendant Guiterrez, Correctional Officer, who was at the podium, Defendant A. Rocha who was in the control booth, and Defendant John Doe, who as in the floor staff's office, and saw the assault and refused to intervene in the incident on or about January 22, 2013, and (3) a claim for retaliation in violation of the First Amendment against Defendant J. Gonzales, Correction Lieutenant, for placing Plaintiff in Ad-seg on or about January 23, 2013; and

2. All other claims and Defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 4, 2018**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE